**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 19-6626

JOSEPH M. WARD, III, Captain (0-3) U.S. Air Force,

Petitioner – Appellant,

v.

UNITED STATES OF AMERICA,

Respondent – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:18-cv-00569-LO-MSN)

Argued: September 8, 2020                           Decided: December 10, 2020

Before KING and FLOYD, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Floyd and Judge Kleeh joined.

**ARGUED:** Captain Brian Lee Mizer, AIR FORCE APPELLATE DEFENSE DIVISION, Joint Base Andrews, Maryland, for Appellant. Matthew James Mezger, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, John E. Swords, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

KING, Circuit Judge:

In these 28 U.S.C. § 2241 proceedings, Joseph M. Ward III petitioned in the Eastern District of Virginia for habeas corpus relief from his military court convictions and sentence, claiming violations of his Fifth Amendment right to due process and Sixth Amendment right to the effective assistance of counsel. The district court dismissed Ward's § 2241 petition under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction over the due process claim and under Rule 12(b)(6) for failure to state a plausible ineffective assistance claim. *See Ward v. United States*, No. 1:18-cv-00569 (E.D. Va. Mar. 27, 2019), ECF No. 10 (the "Dismissal Order"). As explained below, we affirm the dismissal of Ward's § 2241 petition but recognize that Rule 12(b)(6) is the proper basis for the dismissal of both claims.

I.

A.

The record reflects that Ward, then a Captain in the Air Force, was charged with nine violations of the Uniform Code of Military Justice, including two specifications of aggravated sexual assault, two specifications of forcible sodomy, three specifications of assault consummated by battery, and two specifications of conduct unbecoming an officer and a gentleman. The charged crimes involved two women — referred to herein as "M.W." and "R.S." — who had been dating Ward in 2011 and 2012 when he allegedly victimized them. Although M.W. and R.S. disclosed that they had numerous consensual sexual encounters with Ward, they also accused him of various acts of sexual assault.

2

In December 2012, Ward was tried by a general court-martial at Davis-Monthan Air Force Base in Arizona. The prosecution presented evidence that M.W. had reported to Ward's command earlier that year that Ward was engaging in threatening behavior against her (conduct that did not include sexual assault). Shortly thereafter, R.S. separately went to Ward's command and requested a "no-contact" order against him. Pressed to explain why she was seeking the order, R.S. divulged that Ward had sexually assaulted her. Because of R.S.'s allegations, military investigators set up an interview with M.W., in which she revealed that she also had been sexually assaulted by Ward. Under the prosecution's theory of the case, R.S. and M.W. were credible because — despite not knowing each other — their allegations against Ward were quite similar. The defense countered with a theory, however, that R.S. and M.W. actually were acquainted and conspired to falsely accuse Ward of sexual assault to punish him for being unfaithful to and then scorning each of them.

Over Ward's objection, the military judge instructed the jurors that, if one charged act of sexual assault was proved by at least a preponderance of the evidence, that act could be used as propensity evidence when considering other sexual assault charges. *See* J.A. 196-97.[1] That propensity instruction was based on a pattern instruction in the then-applicable 2006 version of the *Military Judges' Benchbook*, addressing how a jury could use propensity evidence under Military Rule of Evidence 413, entitled "Similar Crimes in

_____

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

Sexual Offense Cases." Precedent of the Court of Appeals for the Armed Forces suggested that the propensity instruction was proper. *See United States v. Burton*, 67 M.J. 150, 152-53 (C.A.A.F. 2009); *United States v. Wright*, 53 M.J. 476, 481-83 (C.A.A.F. 2000). And, "at that time, the common understanding of the law [among the trial judges and the lower military courts of criminal appeals] was that charged misconduct could be used as propensity evidence under [Rule] 413." *See United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017). The judge in Ward's court-martial proceedings instructed, inter alia, that "proof of one [charged] sexual assault creates no inference that the accused is guilty of any other sexual assault. However, it may demonstrate that the accused has a propensity to commit that type of offense." *Id.* at 197.

The prosecutor referenced the propensity instruction in his closing arguments, explaining that "here's what it boils down to: If you believe that [Ward committed] one of those [charged] sexual assaults . . . to a preponderance of the evidence, but it doesn't meet that beyond a reasonable doubt, you can still use that for another offense to show that he has a propensity to commit sexual assaults." *See* J.A. 202. The prosecutor elaborated:

> So you can think, "Well, I think [Ward] did it. I think he committed the assault against [M.W.], but it doesn't rise to the level of beyond a reasonable doubt, but I still think he did it." You can actually use that for the sexual assault alleged against [R.S.] That's an important instruction for you guys to consider because these charges, these victims, it didn't happen in a vacuum. And so this evidence can be used in a very important way.

*Id.* at 202-03.

Ultimately, however, the prosecutor emphasized in his closing arguments that the case turned on the joint credibility of M.W. and R.S. That is, the prosecutor argued that

4

the jurors would either believe both women because of their similar accounts of sexual assault and convict Ward on all nine charges, or the jurors would doubt the women's credibility based on Ward's theory of a conspiracy and acquit him on all charges. *See* J.A. 228-30. Ward's defense counsel then pronounced in his closing arguments that "I agree that this case is about credibility of [M.W. and R.S.]. And I agree that it's essentially an all-or-nothing case." *Id.* at 250. Thereafter, the members of the court-martial convicted Ward on all charges and sentenced him to eight years of confinement.

Although Ward's counsel had repeatedly stated his objection to the propensity instruction during the court-martial proceedings, he failed to raise any challenge to that instruction on direct appeal. By its decision of October 23, 2014, the Air Force Court of Criminal Appeals rejected the appellate issues presented by Ward and confirmed his convictions and sentence. The Court of Appeals for the Armed Forces denied review of that decision by its order of February 18, 2015.

B.

On June 27, 2016, more than a year after Ward's losing efforts to overturn his convictions on direct appeal, the Court of Appeals for the Armed Forces decided in *United States v. Hills* that a propensity instruction like the one given during Ward's court-martial proceedings constituted a misuse of Military Rule of Evidence 413 and a breach of the defendant's Fifth Amendment right to due process. *See* 75 M.J. 350, 354-57 (C.A.A.F. 2016). With respect to the constitutional error in giving the instruction, the *Hills* court reasoned that allowing the use of charged conduct as propensity evidence to prove other charges "violated [the defendant's] presumption of innocence and right to have all findings

5

made clearly beyond a reasonable doubt." *Id.* at 356 (citing *In re Winship*, 397 U.S. 358, 363-64 (1970); *Coffin v. United States*, 156 U.S. 432, 453-54 (1895)). In the court's words, "[i]t is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent." *Id.*

Within the next year, the Court of Appeals for the Armed Forces reiterated its *Hills* holding in its May 2, 2017 decision in *Hukill*. The *Hills* and *Hukill* decisions explained that, on direct appeal, an improper propensity instruction is subject to harmless error review. *See Hills*, 75 M.J. at 358 ("If instructional error is found when there are constitutional dimensions at play, the appellant's claims must be tested for prejudice under the standard of harmless beyond a reasonable doubt." (alteration and internal quotation marks omitted)); *accord Hukill*, 76 M.J. at 222. The propensity instructions in *Hills* and *Hukill* were determined to be prejudicial; in direct appeals in the military courts since then, similar instructions have been deemed prejudicial in some circumstances and harmless in others.

On July 12, 2017, a then-imprisoned Ward filed a petition in the Air Force Court of Criminal Appeals for a writ of error coram nobis, invoking the *Hills* and *Hukill* decisions and asserting that the propensity instruction given during his court-martial proceedings contravened his Fifth Amendment right to due process. On September 20, 2017, while Ward's coram nobis petition was pending, the court of criminal appeals issued its decision in *Lewis v. United States*, 76 M.J. 829 (A.F. Ct. Crim. App. 2017), denying the coram nobis

6

petition of another prisoner who claimed under *Hills* and *Hukill* that a propensity instruction was unconstitutional.

Favorably to the petitioner, the Air Force Court of Criminal Appeals recognized in *Lewis* that it has "jurisdiction over a petition for a writ of coram nobis alleging an earlier judgment of conviction previously reviewed by this court was flawed in some fundamental respect." *See* 76 M.J. at 833. For support, the *Lewis* court invoked the precedent of *Chapman v. United States*, 75 M.J. 598 (A.F. Ct. Crim. App. 2016). The *Chapman* decision explained that — although, unlike federal district courts, the Air Force Court of Criminal Appeals lacks jurisdiction over habeas corpus petitions — it possesses jurisdiction over coram nobis petitions. *See* 75 M.J. at 600-01 (citing *United States v. Denedo*, 556 U.S. 904 (2009)).[2]

After confirming its jurisdiction over the coram nobis petition, however, the *Lewis* court proceeded to rule that the petitioner failed to satisfy the threshold requirements for relief. *See* 76 M.J. at 834. As outlined in *Chapman*, such requirements include that "no remedy other than coram nobis is available to rectify the consequences of the error" and that "the sentence has been served, but the consequences of the erroneous conviction

---

[2] In its *Denedo* decision, the Supreme Court observed that "*coram nobis* is . . . an extraordinary tool to correct a legal or factual error" and that "an application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." *See* 556 U.S. at 912-13. The Court also explained that "[b]ecause [a] request for *coram nobis* is simply a further step in [the petitioner's] criminal appeal, the . . . jurisdiction [of a military court of criminal appeals] to issue the writ derives from the earlier jurisdiction it exercised to hear and determine the validity of the conviction on direct review." *Id.* at 914 (internal quotation marks omitted).

persist." *See* 75 M.J. at 601 (internal quotation marks omitted).  The *Lewis* petitioner failed to satisfy those requirements, the court explained, because he "remain[ed] in confinement" and thus was "eligible to seek a writ of habeas corpus from a federal district court."  *See* 76 M.J. at 834.

Finally, in apparent dicta, the Air Force Court of Criminal Appeals observed in its *Lewis* decision that "[e]ven if [the petitioner] met the threshold requirements for coram nobis relief, his petition would fail on the issue of retroactive application of *Hills.*"  *See* 76 M.J. at 834.  The *Lewis* court provided a lengthy explanation of why it interpreted *Hills* to announce a new rule of criminal procedure that was not a watershed rule and therefore "would [not] apply retroactively to [the petitioner's] case."  *See id.* at 834-36 (assessing retroactivity of *Hills* under principles of *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion)).

On September 21, 2017, the day after it issued its decision denying the coram nobis petition in *Lewis*, the Air Force Court of Criminal Appeals entered an order summarily denying Ward's coram nobis petition.  The order simply cited the *Lewis* decision, as well as the *Chapman* decision on which *Lewis* relied.

Following the denial of his coram nobis petition by the Air Force Court of Criminal Appeals on the basis of *Lewis* and *Chapman*, Ward appealed to the Court of Appeals for the Armed Forces.  By its one-sentence order of November 13, 2017, that court denied Ward's appeal without explanation or citation to any authority, including *Lewis* or *Chapman*.  Notably, in a decision issued that same day in another case, *United States v.*

8

*Gray*, the court disclaimed jurisdiction over the coram nobis petition at issue therein. *See* 77 M.J. 5, 6 (C.A.A.F. 2017).

C.

On May 10, 2018, Ward filed his habeas corpus petition under 28 U.S.C. § 2241 in the Eastern District of Virginia, where he is now on parole. In support of his Fifth Amendment due process claim, Ward contends — like he did in his coram nobis petition in the military courts — that the propensity instruction given during his court-martial proceedings contravened his right to due process, as subsequently recognized by the Court of Appeals for the Armed Forces in its *Hills* and *Hukill* decisions. With respect to his Sixth Amendment ineffective assistance claim, which he did not raise in the military courts, Ward asserts that his counsel was constitutionally ineffective in failing to challenge the propensity instruction on direct appeal before *Hills* and *Hukill* were decided.

The government filed a motion to dismiss Ward's § 2241 petition on February 19, 2019, and the district court granted that motion by its Dismissal Order of March 27, 2019. The district court dismissed the Fifth Amendment due process claim under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, on the ground that the claim was fully and fairly considered by a military court. The court relied on the Supreme Court's decision in *Burns v. Wilson*, 346 U.S. 137 (1953), for the proposition that "[w]hen a military court has 'fully and fairly' considered the issues raised in a federal habeas petition, 'it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence.'" *See* Dismissal Order 3 (quoting *Burns*, 346 U.S. at 142). The district court reasoned that the Air Force Court of Criminal Appeals fully and fairly considered Ward's due process claim by

9

dismissing it pursuant to that court's *Lewis* decision, in that *Lewis* "held, albeit in dicta, that the rule announced in *Hills* did not apply retroactively on collateral review." *Id*. As the district court explained its ruling, "[b]ecause [Ward's] *Hills* arguments have . . . already been fully and fairly considered by a military court, this Court lacks jurisdiction to reconsider them." *Id.* (internal quotation marks omitted).

Next, the district court dismissed the Sixth Amendment ineffective assistance claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In so doing, the court recognized that Ward was obliged to "allege facts that, if true, would establish that (a) his appellate counsel's representation fell below 'an objective standard of reasonableness' and (b) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of' his direct appeal 'would have been different.'" *See* Dismissal Order 3-4 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Without reaching the prejudice prong, the court then concluded that Ward's ineffective assistance claim fails on the performance prong. Specifically, the court determined that although Ward's counsel objected to the propensity instruction at trial, "counsel did not act unreasonably in failing to re-raise [Ward's] preserved objections [on direct appeal]." *Id.* at 4. In its analysis, the court observed that counsel generally has no duty to raise a frivolous issue or even all colorable claims on appeal. *Id.* The court also emphasized that "until the [Court of Appeals for the Armed Forces] decided *Hills* after [Ward's] direct appeal had become final, military appellate court precedent held that evidence of charged offenses of sexual assault *could* properly be used as propensity evidence under Military

10

Rule of Evidence 413." *Id.* (citing three decisions issued by military courts of criminal appeals after Ward's direct appeal concluded and prior to *Hills*).

Ward timely noted this appeal from the district court's Dismissal Order. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Our review of the district court's dismissal of Ward's 28 U.S.C. § 2241 petition is de novo. *See Willenbring v. United States*, 559 F.3d 225, 231 (4th Cir. 2009) ("We review de novo the legal rulings made by a district court in habeas corpus proceedings."). We begin with the dismissal of the Fifth Amendment due process claim and then turn to the dismissal of the Sixth Amendment ineffective assistance claim.

A.

At the outset, we recognize that the district court erred in characterizing its dismissal of Ward's Fifth Amendment due process claim as a dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. *See* Dismissal Order 3 (relying on *Burns v. Wilson*, 346 U.S. 137 (1953)). That is because, as the Supreme Court explained in its *Burns* decision, § 2241 "vests federal courts with jurisdiction over applications for habeas corpus from persons confined by the military courts." *See* 346 U.S. at 139. Although the *Burns* Court did caution that a military court decision that "has dealt fully and fairly with an allegation in [the § 2241] application" is "'final' and 'binding' upon all courts," the Court emphasized "that this does not displace the civil courts' jurisdiction." *Id.* at 142. Stated another way, the federal court possesses jurisdiction over the § 2241 petition but "cannot

11

review" claims "fully and fairly reviewed" by the military courts. *See United States v. Willenbring*, 178 F. App'x 223, 224-25 (4th Cir. 2006).

In any event, if the district court properly determined that Ward's Fifth Amendment due process claim was fully and fairly considered by a military court, then the dismissal of that claim is appropriate under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Ward offers several arguments as to why his due process claim was not accorded full and fair consideration by a military court, including the following:

- Contrary to the Dismissal Order, the Air Force Court of Criminal Appeals cannot have fully and fairly considered Ward's due process claim by relying on mere dicta — i.e., the dicta in *Lewis v. United States*, 76 M.J. 829 (A.F. Ct. Crim. App. 2017), indicating that the rule of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), is not retroactively applicable in coram nobis proceedings;

- The Air Force Court of Criminal Appeals also cannot have fully and fairly considered Ward's due process claim in reliance on *Lewis*'s principal ruling that coram nobis relief is unavailable to a petitioner eligible to seek a writ of habeas corpus from a federal court, as the district court's resultant inability to entertain the claim would leave Ward "in limbo," *see* Br. of Appellant 15; and

- By denying Ward's appeal in the coram nobis proceedings on the same day that it issued its decision disclaiming jurisdiction over the coram nobis petition in *United States v. Gray*, 77 M.J. 5 (C.A.A.F. 2017), the Court of Appeals for the Armed Forces evidenced that it denied Ward's appeal for lack of jurisdiction and therefore did not fully and fairly consider his due process claim.

Without unnecessarily delving into those complicated issues, we conclude that the Rule 12(b)(6) dismissal of Ward's Fifth Amendment due process claim is proper for a reason readily apparent from the record: The propensity instruction given during Ward's court-martial proceedings was insufficiently prejudicial to entitle him to habeas corpus

12

relief. Simply put, Ward cannot satisfy the heavy "burden of demonstrating that [the propensity] instruction was so prejudicial that it . . . by itself so infected the entire trial that the resulting conviction[s] violate[] due process." *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks omitted).

As heretofore recounted, the prosecution presented an "all-or-nothing case" that hinged on the joint credibility of Ward's two victims. The jury's primary reason for believing the women was the similarity of their accounts of being sexually abused by Ward, and the jury's principal basis for doubting the women was Ward's theory that they conspired to falsely accuse him of sexual assault. In these circumstances, it is improbable that the jury believed one of the women beyond a reasonable doubt but not the other and then relied on the propensity instruction to convict Ward on all charges. Accordingly, it is questionable whether the propensity instruction would be deemed prejudicial under even the harmless error standard applied by the military courts in direct appeals. *See Hills*, 75 M.J. at 358; *see also United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017). To be sure, Ward cannot demonstrate that the propensity instruction was sufficiently prejudicial to entitle him to habeas corpus relief.

## B.

For similar reasons, we conclude that the Rule 12(b)(6) dismissal of Ward's Sixth Amendment ineffective assistance claim is proper. Notably, Ward contests the district court's ruling that his ineffective assistance claim fails on the performance prong of *Strickland v. Washington*, 466 U.S. 668, 688 (1984); specifically, Ward argues that because other lawyers were challenging similar instructions during the relevant time period, his

13

counsel acted unreasonably in failing to raise the propensity instruction as an issue on direct appeal. We need not reach and address the merits of that contention, however, because Ward's claim clearly fails on *Strickland*'s prejudice prong. *See* 466 U.S. at 694 (requiring "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). As we explained in affirming the dismissal of Ward's Fifth Amendment due process claim, the propensity instruction may well have constituted harmless error under *Hills* and *Hukill*. Thus, Ward cannot show a reasonable probability that a challenge to the propensity instruction on direct appeal would have been successful.

## III.

Pursuant to the foregoing, we affirm the dismissal by the district court of the Eastern District of Virginia of Ward's habeas corpus petition under 28 U.S.C. § 2241.

*AFFIRMED*