# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist CHRISTOPHER B. HUKILL**
**United States Army, Appellant**

ARMY 20140939

Headquarters, Fort Campbell
Steven E. Walburn and Matthew A. Calarco, Military Judges
Colonel Laura J. Calese, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Captain Benjamin A. Accinelli, JA; Captain Steven J. Dray, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Hannah E. Kaufman, JA; Captain R. Tristan C. De Vega, JA (on brief).

9 March 2020

-----------------------------------
SUMMARY DISPOSITION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Appellant claims the military judge abused his discretion in prohibiting the defense from questioning the victim, HG, about specific instances of conduct under Military Rule of Evidence [Mil. R. Evid.] 608(b), which appellant argues bore on HG's character for untruthfulness.[1] We disagree.

---

[1] One of appellant's other assigned errors is that he was denied his due process right to speedy post-trial review by a post-trial delay of 272 days. We considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530-34 (1972), and find appellant has not satisfied the fourth prong of demonstrating prejudice. Accordingly we grant no relief. Appellant also personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Pursuant to *Grostefon*, appellant claims his

(continued . . .)

## BACKGROUND

Appellant was initially tried in 2014 by a military judge sitting as a general court-martial and convicted, contrary to his pleas, of one specification of rape and one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1. This court affirmed the findings and sentence on 9 August 2016. *United States v. Hukill*, ARMY 20140939, 2016 CCA LEXIS 492 (Army Ct. Crim. App. 9 Aug. 2016) (mem. op.). On 2 May 2017, the Court of Appeals for the Armed Forces (C.A.A.F.) set aside the findings and sentence and authorized a rehearing. *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017).

At appellant's rehearing, an enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault and two specifications of abusive sexual contact in violation of Article 120, UCMJ. The panel sentenced appellant to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited appellant with 938 days against his sentence to confinement.

*Appellant's Offenses*

Appellant and HG met when she responded to appellant's online advertisement for models for appellant's motorcycle magazine. HG became friends with appellant and his live-in girlfriend and would often spend the night at their home. On one occasion, appellant and HG went to a local bar where appellant's girlfriend worked. While at the bar, HG consumed approximately twenty-six shots of tequila over a period of approximately six hours. Appellant drove HG to his home. During the drive home, HG vomited several times. Once they arrived at appellant's home, appellant told HG, "You need to take a bath." HG replied that she did not want to take a bath. Appellant insisted that she needed to take a bath, pinned her against the wall, and then pulled HG's clothes off. HG continued to tell

---

(. . . continued)
defense counsel were ineffective. However, appellant never states how his defense counsel were deficient, let alone how he was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We have given full and fair consideration to appellant's other assigned errors and his second *Grostefon* matter, and determine they warrant neither discussion nor relief.

appellant to stop, she did not want to take a bath, she did not want appellant to remove her clothes, and she wanted to go to bed.

Appellant placed HG in the bathtub and then bathed her with a washrag. Appellant touched HG's breasts and vagina while HG repeatedly told him to stop. After the bath, appellant dried HG with a towel, despite HG telling him that she could do it herself. Appellant, again, touched her breasts, vagina, and buttocks. In the hallway between the bathroom and bedroom, appellant pushed HG up against the wall, told her to "stop fighting with him," and placed underwear on her by lifting her legs and pulling it up her body. Appellant then carried HG to the guest bedroom, and laid next to her in the bed. HG told appellant to leave her alone and then she fell asleep. HG awoke to appellant inserting his finger into her vagina. HG told appellant, again, to leave her alone. Appellant got up and left the bedroom.

*Military Rule of Evidence 608(b) Testimony and Ruling*

During the defense cross-examination of HG, the defense requested an Article 39(a) session outside the presence of the panel to discuss eliciting Mil. R. Evid. 608(b) testimony from HG. During the hearing, the defense proffered that, a couple of days prior to trial, the government disclosed that HG "has an ongoing criminal case in Jacksonville, Onslo County, North Carolina pertaining to check fraud." However, the government stated that upon asking HG more questions, they realized it was not a criminal matter and proffered the following additional details:

> There is an investigation. It is unclear to the government which entity is conducting the investigation. But the facts could be a landlord tenant dispute about days post an eviction notice, and a check that was given but wasn't cashed for a couple of weeks, and then bounced, and when money was tried to be given instead they wouldn't take it because then their eviction timeline would start over because they had been paid. So there is an investigation pending and we may be looking at nothing more than a civil dispute between a landlord and tenant.[2]

The military judge then offered the defense the opportunity to call HG to testify regarding the matter outside the presence of the panel.

---

[2] The government also proffered to the military judge that the Army Criminal Investigation Command (CID) ran a background check and reached out to Onslo County and "nothing has come up."

> [Civilian Defense Counsel (CDC)]: Ma'am, are you currently under investigation in Onslo County, North Carolina for anything?
>
> [HG]: Yes. And I was advised by my attorney back home not to discuss it.
>
> . . . .
>
> [CDC]: [W]hat is the nature of the investigation?
>
> [HG]: I'm not allowed to discuss the case.
>
> [CDC]: Is there a criminal investigation?
>
> [HG]: Can I plead the Fifth Amendment?
>
> [Military Judge]: If that's what you want to do.

The military judge found that this was a "relatively amorphous collateral issue related to [Mil. R. Evid. 608(b)]" and denied the defense request to question HG regarding the investigation. Relying on *United States v. Robertson*, 39 M.J. 211 (C.M.A. 1994), the military judge held that even if he considered the evidence in the light most favorable to the defense, "there are no underlying facts" showing "some crime of moral turpitude in that a bad check was written knowing there weren't funds in an account in an attempt to defraud somebody in some manner."

## LAW AND ANALYSIS

We review a military judge's evidentiary ruling for an abuse of discretion. *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999). The abuse of discretion is a strict one, calling for more than a mere difference of opinion. *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *Id.* (citations and internal quotation marks omitted).

Military Rule of Evidence 608(b) provides that "[e]xcept for a criminal conviction under Mil. R. Evid. 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. The military judge may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness of . . . the witness."

"In order to have proper cross-examination as to misconduct relating to untruthfulness: (1) there must be a good-faith belief by the opponent that the conduct occurred; and (2) the conduct must relate to instance of untruthfulness." *Robertson*, 39 M.J. at 211, 214. "When such a specific act of misconduct is, in and of itself, directly probative of the witness' truthfulness, a military judge must allow it because, by definition, it is always relevant to the issue of that witness' credibility." *United States v. Stavely*, 33 M.J. 92, 93 (C.M.A. 1991).

In appellant's case, there is no evidence that the investigation involving HG in North Carolina related to her untruthfulness. The mere existence of an investigation is not probative of a witness's character for truthfulness. *See, e.g., Robertson*, 39 M.J. at 215 ("The key to the impeachment questions is not the fact of the arrest itself but, instead, whether the underlying facts of the arrest relate to truthfulness or untruthfulness."). The only evidence before the military judge was HG's testimony on the matter, in which she agreed that she was under investigation in North Carolina, but then did not provide any further details, and invoked her Fifth Amendment right to remain silent. Thus, the record does not reveal the underlying facts of the investigation.

Further, the military judge considered the defense and government proffers, assuming HG would testify accordingly, and found that "a disputed bounced check" was not probative of her character for truthfulness. We agree.[3] Without more details regarding how or why the check bounced, we cannot determine that this specific act is probative of HG's character for truthfulness. Accordingly, the military judge did not abuse his discretion in not allowing the defense to question HG regarding the investigation.

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

---

[3] We note that Mil. R. Evid. 609 allows the introduction of a prior conviction if the crime is one involving dishonesty. As appellant argues on appeal, a *conviction* for writing a bad check, which requires proof beyond a reasonable doubt that the person knowingly made a worthless check with intent to defraud, might be a *crimen falsi* admissible under Mil. R. Evid. 609. *See, e.g., United States v. Harper*, 527 F.3d 396, 408 (5th Cir. 2008). However, there is no evidence HG was *convicted*, just that there was a pending investigation for something that *might* amount to a dishonored check. Pursuant to Mil. R. Evid. 403, the probative value of this evidence is outweighed by the danger of confusing the issues and misleading the panel.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court